IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMMINADAB YISRAEL-BEN LEVY,
formerly known as Gillium Levy,

                         OPINION AND ORDER

              Plaintiff,

                         09-cv-279-vis[1]

        v

C. HOLINKA, MARION FEATHER,
BILL L. JONES, R. MARTINEZ,
LIEUTENANT MARTEN, CHARLES
LOCKETT and HARRELL WATTS,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       In this civil action, plaintiff Amminadab Yisrael-Ben Levy, a prisoner at the Federal

Correctional Institution in Oxford, Wisconsin, is proceeding against defendants C. Holinka,

Marion Feather, Bill L. Jones, R. Martinez, Lieutenant Marten, Charles Lockett and Harrell

Watts on his claims that they violated his rights under the free exercise clause of the First

Amendment and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, when

they denied him religious headwear and the opportunity to celebrate high holy days.  He also

---

      [1]While this court had a judicial vacancy, this case was assigned to a visiting judge.
However, for the purpose of issuing this order, I am assuming jurisdiction over the case.

is proceeding on claims under the establishment clause of the First Amendment and the due process clause of the Fifth Amendment that defendants discriminated against him on the basis of his religion because they recognize other religious faiths and allow inmate members of those faiths to possess religious headwear and observe holy days.  Now before the court is defendants' motion to dismiss and alternative motion for summary judgment.

Plaintiff has asked for dismissal of his claims against defendants Lockett, Watts, Feather and Holinka.  That request will be granted.  The remaining motion of defendants Jones, Martinez and Marten will be decided as a motion for summary judgment because defendants have presented matters outside the pleadings and plaintiff has had a reasonable opportunity to respond. Fed. R. Civ. P. 12(d).  Unfortunately, plaintiff has not followed the Procedure To Be Followed on Motions for Summary Judgment, attached to the January 19, 2010 Preliminary Pretrial Conference Order.  Dkt. #39, at 12.  He did not respond to defendants' proposed findings of fact and, although he submitted his own proposed findings of fact, he failed to submit an affidavit or cite any evidence in support of his proposals.  As noted in the court's Memorandum to Pro se Litigants Regarding Summary Judgment Motions, plaintiff must tell the court and defendants what evidence in the record supports his version of the facts.  Id. at 14.  Because no material issue of fact is in dispute and the record contains insufficient evidence to raise a triable issue on any of plaintiff's claims, I will grant defendants' motion for summary judgment.

2

For the purpose of deciding this motion, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. The Parties

At all times material to this action, plaintiff Amminadab Yisrael-Ben Levy was an inmate at the Federal Correctional Institution in Oxford, Wisconsin.  In 2006, defendant R. Martinez was the warden of the institution, defendant Lieutenant Marten was a security officer and defendant Bill Jones was the chaplain at the institution.

### B. Bureau of Prison Policy Regarding Headwear

Headwear presents serious security concerns for the Bureau of Prisons because inmates may use it to hide contraband, including weapons, or to demonstrate gang affiliation.  It is essential to prison security to control access to headwear, including the types and colors of headwear that may be worn.  For these reasons, the Bureau of Prisons has issued a policy regarding the types of religious headwear that inmates are authorized to possess.  Program Statement 5360.09.  At present, the Bureau of Prisons authorizes 24 different umbrella categories of religions.  An inmate may possess and wear only those types and colors of headwear that the Bureau has authorized for the inmate's designated umbrella

3

category.

Larger headwear, such as turbans, poses a greater security risk than smaller headwear, such as a yarmulke.  In addition to their size, turbans are of particular concern because their use is associated with the Afghani Taliban.  These security concerns have caused  the Bureau of Prisons to deny authorization of the widespread use of turbans.  Inmates practicing the Sikh religion are the only inmates authorized to wear turbans because there is no alternative headwear that they can wear.  Only one inmate practicing Sikh is housed in this region.

## C.  Plaintiff's Religious Practice

On January 29, 2006, plaintiff designated his religious preference as Jewish.  The authorized headwear for the Jewish religion is a yarmulke.  In March 2006, defendants Jones and Marten took plaintiff's Kippah and destroyed it.   Plaintiff did not exhaust his administrative remedies on any claim arising from that incident.

On June 1, 2006, plaintiff changed his religious preference designation to Messianic Sabbatarianism, for which the authorized headwear is a yarmulke.  On May 19, 2007, he changed his religious preference designation back to Jewish.  On June 27, 2007, plaintiff submitted a request to purchase a kufi.  Defendant Martinez authorized the purchase.  Shortly thereafter, defendant Martinez left FCI-Oxford.

On June 12, 2008, plaintiff filed an inmate grievance (BP-9), asking to be

4

acknowledged as a Hebrew Israelite and to be allowed to wear his requested headwear.  He stated, "I am only requesting to be allowed to purchase a turban, wear it accordingly and to be acknowledged as a Hebrew Israelite separate from Messianic Sabbatarianism."   In support of his request, he submitted an "Official Statement" from Yehoshaphat Israel, the Executive Director of the Jerusalem Chronicle Newspaper Prison Ministry.  The statement provided in pertinent part:

> We respectfully petition you to honor their diet, their request for time to worship, their religious visitation rights, and their rights to observe their religious holy days in accordance with their spiritual convictions and those afforded by the U.S. Constitution.

Dkt. #36, Exh. E at 3.

On July 2, 2008, the warden responded to plaintiff's request, saying that religious practices for Hebrew Israelites were essentially the same as for Judaism.  The warden denied plaintiff's requests to be acknowledged as a Hebrew Israelite and to wear a turban.  On July 7, 2008, plaintiff filed a BP-10 grievance with the regional director, complaining that his First Amendment rights were being violated.  On September 12, 2008, plaintiff received a response to his BP-10, informing him that because his religious preference was Jewish, his approved headwear was a yarmulke.   He also was advised that he could obtain reconsideration by completing a New or Unfamiliar Religious Component Questionnaire and submitting it the Religious Services Department for review.

On October 4, 2008, plaintiff filed a BP-11 grievance with the central office, stating for the first time that defendant Jones had not signed or submitted his New and Unfamiliar Religious Component Form.  This appeal was denied.

OPINION

A.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act, an inmate must exhaust all grievance procedures that are available to him.  42 U.S.C. § 1997e(a).  The Bureau of Prison's Grievance Procedures are set forth at 28 C.F.R. §§ 542.13-15.  An inmate must first present his concerns to staff so that staff can attempt to resolve the issue informally.  If no informal resolution is reached, the inmate must file a BP-9 with the warden.  If the inmate does not receive relief, he must file a BP-10 with the regional director.  The final step is to file a BP-11 with the central office.

It is undisputed that plaintiff exhausted his administrative remedies only with respect to his claim that defendant Jones denied him his right to wear a turban.  Plaintiff did not exhaust his administrative remedies on his claim that he was denied his right to celebrate holy days or on any claims against defendants Martinez and Marten.  Therefore, I will grant summary judgment for these defendants and dismiss plaintiff's claims against them without prejudice because plaintiff failed to exhaust his administrative remedies.  I now turn to the

6

merits of the remaining claims against defendant Jones for violations of plaintiff's rights under the First and Fourteenth Amendments and RLUIPA.

B.  <u>RFRA and the Free Exercise Clause</u>

The Religious Freedom Restoration Act provides that the federal "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means."  42 U.S.C. §§ 2000bb-1(a)-(b); <u>see also</u> <u>O'Bryan v. Bureau of Prisons</u>, 349 F.3d 399, 400-01 (7th Cir. 2003) (noting same).  The free exercise clause of the First Amendment similarly protects persons from substantial government burdens on the exercise of their religion.  <u>Hernandez v. Commissioner of Internal Revenue</u>, 490 U.S. 680, 699 (1989).  The protections offered by this clause are more limited than those extended under RFRA.  Although RFRA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc-5(7)(A) (made applicable to RFRA by § 2000bb-2(4)), the United States Supreme Court has held that the First Amendment protects only "the observation of a central religious belief or practice."  <u>Hernandez</u>, 490 U.S. at 699.

Under either the First Amendment or RFRA, plaintiff must establish that defendants placed a substantial burden on the exercise of his religious beliefs.  <u>Koger v. Bryan</u>, 523 F.3d

789, 797-98 (7th Cir. 2008); <u>Vision Church v. Village of Long Grove</u>, 468 F.3d 975, 996-97 (7th Cir. 2006). RFRA does not define the term "substantial burden." However, the Court of Appeals for the Seventh Circuit has expounded on the meaning of this term in cases brought under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc, which is a related statute that applies religious protections to state prisoners. The court of appeals has defined a substantial burden as one "that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." <u>Civil Liberties for Urban Believers v. City of Chicago</u>, 342 F.3d 752, 761 (7th Cir. 2003). Further, "[a] government action substantially burdens religious exercise if it prevents or inhibits religiously motivated conduct or compels conduct contrary to religious beliefs." <u>Koger</u>, 523 F.3d at 798. Plaintiff has not met this burden.

Plaintiff has been allowed to possess and wear a yarmulke because he designated his religious preference as Jewish. Although he attempted to change his religious preference to Hebrew Israelite, prison officials determined that Hebrew Israelite religion fell within the umbrella category of Judaism. Plaintiff has adduced no evidence showing that defendant Jones burdened his ability to exercise his religion, substantially or otherwise, by not allowing him to wear a turban. In fact, in the statement from a Hebrew Israelite religious leader that plaintiff submitted in support of his request to wear a turban, the wearing of a turban is not listed as one of the required practices of the religion.

8

In any event, defendant has shown that prohibiting the widespread use of turbans furthers a legitimate and compelling state interest and is the least restrictive means available. O'Bryan, 349 F.3d at 400-01 (government must demonstrate, and not just assert, this showing); Cutter, 544 U.S. at 726 (under RLUIPA, if request is "excessive, impose[s] unjustified burdens on other institutionalized persons, or jeopardize[s] the effective functioning of an institution, the prison [is] free to resist the imposition"); Conyers v. Abitz, 416 F.3d 580, 585 (7th Cir. 2005) (First Amendment right to free exercise of religion subject to legitimate penological demands of state).  The undisputed facts show that the widespread wearing of turbans jeopardizes the safety and security of other inmates, staff and the institution because turbans can be used to hide contraband or represent gang affiliation. The only inmates allowed to wear turbans are those practicing the Sikh religion, which includes only a small number of inmates.  Further, plaintiff has alternative means to exercise his First Amendment rights because he can wear a yarmulke as a head covering.  The yarmulke is smaller in size than a turban and is less likely to be used to hide contraband.

Given the difficulty that defendants have described in being able to maintain security if the wearing of turbans is widespread, I conclude that banning them for most religious groups is likely the least restrictive means of meeting the compelling interest.  Therefore, I will grant defendant Jones's motion for summary judgment as it relates to plaintiff's claims that defendant violated his rights under the free exercise clause and RFRA when he denied

9

plaintiff's requests for a turban.

### C. Establishment Clause and Fifth Amendment Due Process

With respect to discrimination claims based on religion, the analysis is the same whether the claim is viewed under the establishment clause, the equal protection clause or the due process clause. Board of Education of Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 687, 715 (1994) (O'Connor, J., concurring) ("[T]he Religion Clauses . . . and the Equal Protection Clause as applied to religion—all speak with one voice on this point."). Because defendants are federal employees, they are not bound by the equal protection clause of the Fourteenth Amendment, which applies only to state actors. Instead, the equal protection analysis must proceed under the Fifth Amendment. The Fifth Amendment does not contain an equal protection clause, but the United States Supreme Court has held that the amendment's due process clause prevents the federal government from "engaging in discrimination that is 'so unjustifiable as to be violative of due process.'" Schlesinger v. Ballard, 419 U.S. 498, 500 (1975) (quoting Bolling v. Sharpe, 347 U.S. 497, 499 (1954)); see also Weinberger v. Wiesenfeld, 420 U.S. 636, 638, n.2 (1975) (Fifth Amendment due process clause imposes obligation of equal treatment on the federal government); Nicholas v. Tucker, 114 F.3d 17, 19 (2d Cir. 1997) ("the standards for analyzing equal protection claims under either amendment are identical").

The question in this case is whether defendants were singling out particular religions

10

for special treatment without a secular reason for doing so.  Cruz v. Beto, 405 U.S. 319 (1972); Kaufman v. McCaughtry, 419 F.3d  419 F.3d 678, 683-84 (7th Cir. 2005).  The establishment clause of the First Amendment "commands a separation of church and state," Cutter, 544 U.S. at 710, by preventing the government from promoting any religious doctrine or organization or affiliating itself with one.  County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 590 (1989).  A governmental policy violates the establishment clause if "(1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion."  Kaufman, 419 F.3d at 683 (citing Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971)); Books v. City of Elkhart, 235 F.3d 292, 301 (7th Cir. 2000).  Under the due process clause of the Fifth Amendment, plaintiff must establish that a state actor both treated him differently from other similarly situated individuals and did so purposefully.  Weinberger, 420 U.S. at 653; DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000) (addressing equal protection clause).

Plaintiff has submitted no evidence that defendant Jones singled out the Hebrew Israelite religion for special treatment without any secular reason for doing so.  It is undisputed that widespread wearing of turbans is not allowed for security purposes.  Although Jewish and Sikh inmates are allowed headwear, it is undisputed that the security risks are much lower in those contexts.  Inmates are much less likely to use yarmulkes to hide weapons because they are small in size.  Although Sikhs are allowed to wear turbans, there

11

is only one practicing Sikh incarcerated in the region and a turban is essential to the practice of that religion. Therefore, defendant Jones is entitled to judgment in his favor on plaintiff's First Amendment establishment clause and Fifth Amendment due process claims.


ORDER

IT IS ORDERED that the motion for summary judgment, dkt. #33, filed by defendants C. Holinka, Marion Feather, Bill Jones, R. Martinez, Lieutenant Marten, Charles Lockett and Harrell Watts is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 30th day of March, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

12